```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION
```

UNITED STATES OF AMERICA

VS.                              CRIMINAL NO. 3:07-cr-138(DCB)(JCS)

JOSEPH McNEALY

ORDER

This cause is before the Court on the defendant Joseph McNealy ("McNealy")'s motion to dismiss for pre-indictment delay **(docket entry 24)**. Having carefully considered the motion and the government's response, and being fully advised in the premises, the Court finds that no oral hearing is necessary, and further finds as follows:

The indictment in this case charges McNealy with one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), and three counts of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2)[1], and includes a forfeiture count pursuant to 18 U.S.C. § 2253.  McNealy moves for dismissal of all counts, asserting that 18 U.S.C. § 2252, et seq., is unconstitutionally overbroad on its face and as applied to him.

In his motion to dismiss, the defendant contends that the pre-indictment delay in his case violated his rights under the speedy

---

[1] The original indictment charged McNealy with one count each of possession and receipt of child pornography.  On August 20, 2008, the government filed a superseding indictment charging McNealy with two additional counts of receipt of child pornography.

trial clause of the Sixth Amendment to the United States Constitution.[2]  Motion to Dismiss, p. 2.  The government seized McNealy's computer on September 4, 2004.  He was not indicted until October 24, 2007, more than three years after his computer was seized.  Motion to Dismiss, pp. 2-3.  The defendant argues:

> the gist of the government's claim is that McNealy visited a web page and entered credit card information into that web page to obtain content.  The government alleges the web page he visited informed him that the content he was purchasing was of minors and/or was illegal.  Further, they are alleging that content found on his computer is illegal and may or may not have originated from the site he subscribed to.

Motion to Dismiss, p. 3.  The defendant further contends that this webpage was "taken down" by the government more than five years before McNealy was indicted, Motion to Dismiss, p. 3, and that the government has "gained a tremendous advantage" in that it has

> incapacitated Mr. McNealy from challenging the allegations against him while simultaneously insulating itself from the risk and expense of a trial while potential defense evidence was still accessible.  With the key website from which its central allegations and basis for its search emanate now five years gone, they have maneuvered a superior advantage against McNealy.  Secondly, the government delay significantly impaired his ability to mount a defense because valuable evidence is now lost and unrecoverable.
>
> . . .
>
> The three year delay in indicting him now makes it unlikely either the government or Mr. McNealy will be

---

[2] As discussed elsewhere in this Opinion, the proper measure of a claim of prejudice due to pre-indictment delay is the due process standard of the Fifth Amendment, not the speedy trial clause of the Sixth Amendment.

> able to locate or recover the webpage he visited and which contained the information prompting him to enter his credit card information to subscribe.  The delay also prevents McNealy from obtaining information regarding that alleged subscription to demonstrate what was or was not purchased during the term of that alleged subscription.  The delay prevents McNealy from exploring the content of that site to determine whether the content was in fact illegal, legal, or a mixture of the two.  That specific page or website (the government's discovery to this point makes that issue unclear) is the government's entire case.  It makes or breaks the "knowledge" component of the statutory elements they must prove.  If the items allegedly found on his computer are alleged to have come from the now distantly gone website, he is prevented from confirming or refuting that allegation based upon the three year delay.

Motion to Dismiss, pp. 4-5.

To show a due process violation based on pre-indictment delay, the defendant must satisfy a two-part test.  He must prove (1) that the delay resulted in actual and substantial prejudice, and (2) that the delay resulted from an intentional and tactical decision made by the prosecution.  See United States v. Marion, 404 U.S. 307, 322 (1971); United States v. Crouch, 84 F.3d 1497, 1508 (5th Cir. 1996)(en banc), cert. denied, 519 U.S. 1076 (1997)(concluding that both actual prejudice and intentional, bad faith delay must be shown); United States v. Mmahat, 106 F.3d 89, 93 (5th Cir.), cert. denied, 522 U.S. 878 (1997)(same); United States v. Mulderig, 120 F.3d 534, 540 (5th Cir. 1997).

In response to the defendant's motion, the government presents the following background information concerning the investigation that led to McNealy's original indictment and subsequent arrest:

3

A joint task force composed of agents from the United States Immigration and Customs [Enforcement agency] (ICE), Internal Revenue Service (IRS), and the United States Postal Service (USPS) launched an investigation into individuals and corporations involved in the production and distribution of child pornography through the internet in what was known as "Operation Falcon." The Newark, New Jersey ICE Office served as the lead agency for this National Operation. Members or subscribers to child pornography sites were identified on the Internet through their purchases to web sites which contained visual depictions of children engaging in sexually explicit conduct. Contained within each website was promotional material advertising additional web sites for obtaining child pornography for members - only. In order to gain access to these visual images, an individual had to purchase a membership using their credit card. Law enforcement agents acting under-cover gained access to the members-only web sites for child pornography by purchasing subscriptions. During each such purchase, a billing page automatically appeared on the computer screen seeking personal and financial information from the person seeking membership. After completing the credit card purchases, each agent/purchaser was instructed to "hit the JOIN NOW! Button" on the screen.

The investigation by the Joint Task Force revealed that two companies, Verio, Inc. ("Verio") and Rackspace Managed Hosting ("Rackspace") maintained servers for a company called Regpay. Regpay would indicate to the customers in an email that the purchase for membership-only had been successful. The email message further provided login information and a password to login into the members-only site. The email message also stated that Iserve" will appear on the individual's credit card statement as a beneficiary of the transaction.

The ICE Task Force executed search warrants on Iserve for the credit card processing information. The records revealed that the funds for the credit card transactions were transferred into banks using the credit card processing company, First Data Merchant Services, Inc. ("First Data"). First Data's records indicated it was hired by a company called Connections to process credit card transactions. The records ultimately lead back to Regpay as the beneficiary of the credit card transactions.

4

> Various ICE Offices throughout the United States including Jackson, Mississippi received a list of individuals who had purchased membership into websites for child pornography for further investigations. Defendant McNealy's home address, email address and credit card account information were among the list[] of individuals who had purchased a membership into the Regpay's website, "dark-feeling" for $57.90.
>
> On September 14, 2004, agents of the ICE Office in Jackson, Mississippi conducted an interview with defendant McNealy at his residence .... Defendant signed a consent for the search for his computer by the agents who conduct[ed] a brief image scan of the computer there on the scene that revealed the presence of visual images depicting children engaging in sexual explicit conduct. The computer was then seized.
>
> On February 5, 2007, a forensic examination was performed on defendant's computer which confirmed that there were numerous visual images depicting children under eighteen years old engaging in sexual explicit conduct. The forensic analysis book marked at least 469 visual images of child pornography on the defendant's computer.

Government's Response, pp. 2-4.  The original indictment in this case was entered on October 24, 2007.

The defendant claims that the government made a tactical decision not to prosecute him in order to "take advantage of changes in the law that now severely restrict McNealy's ability to have possession of and regularly review the computer evidence." Motion to Dismiss, pp. 6-7.  However, the defendant has not shown that his counsel and experts are prohibited from performing investigative tasks.  The Adam Walsh Child Protection and Safety Act of 2006, 18 U.S.C. § 3509, provides that "defendants, their legal counsel and their experts are entitled to 'inspect[], view[],

and examin[e]' the child pornography," although "[t]hey cannot ... take the child pornography out of the custody of the court or the government."  U.S. v. Johnson, 456 F.Supp.2d 1016 (N.D. Iowa 2006)(citing 18 U.S.C. § 3509(m)(2)).  Section 3509(m)(2)(A) provides: "notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material reasonably available to the defendant."  Section 3509(m)(2)(B) provides that "... if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material," then the property or material is deemed "reasonably available to the defendant."

     The record reflects that the government has continued to provide ample opportunity to the defendant to view and inspect the evidence.  See Letter from AUSA Glenda Haynes to defense counsel Kevin Camp, dated April 21, 2008 ("Should you and [co-counsel] Mr. Boland desire to view the evidence in this case, please let me know and arrangements will be made for the viewing.")(attached as Exhibit A to Defendant's Motion to Dismiss for Fair Trial Violation); Order Regarding Discovery of August 26, 2008 (providing, at the government's request, a schedule for pretrial discovery and inspection, including evidence the government intends to offer in evidence during its case in chief).  On November 3,

2008, Barak Cohen (U.S. Dept. of Justice) sent defense attorney Dean Boland e-mail correspondence stating:

> At least twice over the last several months, we have invited you by letter and e-mail to view the evidence in this case. It is now nine days before trial. As I'm sure that you're aware, making arrangements for you to view the evidence will take some doing. After that, we will expect to receive your expert report with sufficient time to prepare for trial (you have now had our expert report for several months).

Copy of e-mail correspondence attached as Exhibit A to Government's Motion for Continuance of November 4, 2008.

McNealy alleges that at the time his computer was seized, in 2004, he was entitled under then-existing law to a copy of all seized media, not merely a viewing of the evidence, and infers that the government made a conscious decision to delay the indictment in order to prevent his attorneys from being able to receive copies of the evidence. However, it is not certain that McNealy would have been entitled to copies of the alleged child pornography in 2004. In 1995, the Fifth Circuit had held, in United States v. Kimbrough, 69 F.3d 723 (5th Cir. 1995), that "[t]he Government's offer to make the materials available for inspection but not to allow them to be copied was reasonable." Id. at 731. Moreover, even under the present law, a defendant is not necessarily prohibited from obtaining copies of evidence, if the government's offer to allow a viewing does not constitute "ample opportunity" for examination of the evidence. See United States v. Knellinger, 471 F.Supp. 640, 645-646 (E.D. Va. 2007)(ordering government to produce a mirror

image copy of defendant's hard drive, and noting that "whether there is ample opportunity for inspection, viewing, and examination is a factual issue that must be resolved on the record in each case").

McNealy also argues that he is unable to explore the content of the members-only website "to determine whether the content was in fact illegal, legal, or a mixture of the two."  Motion to Dismiss, p. 5.  The government shows that McNealy's desire to examine the website in an "operating state" would have been impossible in any case because the business was closed by the initial ICE Task Force execution of search warrants prior to McNealy's identity being known from the credit card transaction records of Regpay.  "The investigation of this defendant involved more than just receiving his name from the Task Force and preceding [sic] to an indictment.  Such matters as personal identifying information of credit card account, internet account, email address, the physical location and address of this defendant had to be verified."  Government's Response, p. 8.

The government also states that the basis of the indictment, which charges the defendant with possessing and receiving child pornography, can be found on the defendant's computer which was seized from him on September 14, 2004.  The government has not, it asserts, indicted the defendant "for evidence contained on the websites, but rather on child pornography in this defendant's

possession."  Government's Response, p. 8.

McNealy must demonstrate that the government intended at the beginning of the delay to gain a tactical advantage.  Beckwith v. Anderson, 89 F.Supp.2d 788, 806 (S.D. Miss. 2000).  A finding of intentional delay cannot arise from mere negligence or recklessness.  Rather, "some bad faith or improper purpose" must be shown.  See Crouch, 84 F.3d at 1510; United States v. Lovasco, 431 U.S. 783, 792-94 (1977)(distinguishing investigative delay from delay undertaken "solely to gain tactical advantage").  McNealy has not offered sufficient proof that the government intended to gain a tactical advantage by deliberately delaying the indictment; thus, he has not shown any intentional delay on the part of the government.

In addition, McNealy has failed to show actual and substantial prejudice.  Presumptive prejudice is insufficient.  Crouch, 84 F.3d at 1514; Lovasco, 431 U.S. at 790.  In United States v. Beszborn, 21 F.3d 62 (5th Cir. 1994), the Fifth Circuit held:

> The concept of presumed prejudice has no place in a due process analysis, and the district court's reliance on [Doggett v. United States, 505 U.S. 647 (1992)] is misplaced.  Doggett was a case involving a Sixth Amendment speedy trial violation claim, due to post-indictment delay, rather than pre-indictment delay.  The proper measure of a claim of prejudice due to pre-indictment delay is the due process standard of the Fifth Amendment, which requires a showing of actual prejudice. Without proof of actual prejudice resulting from the delay, a due process claim is merely speculative and cannot be maintained.

Id. at 66.  The court also held that "[t]he applicable statute of

limitations is the mechanism established by law to guard against possible, as distinguished from actual, prejudice resulting from the passage of time between crime and the charge, protecting a defendant from overly stale criminal charges." Id. (citations omitted). The statute of limitations applicable in this case is 18 U.S.C. § 3282(a), which provides a general limitations period of five years for non-capital offenses.

McNealy has failed to satisfy the two-part test to show a due process violation based on pre-indictment delay, and his motion shall be denied. Accordingly,

IT IS HEREBY ORDERED that the defendant Joseph McNealy's motion to dismiss for pre-indictment delay **(docket entry 24)** is DENIED.

SO ORDERED, this the 24th day of November, 2008.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE